No. 89-532

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

WILLIAM DONNELLY,

Defendant and Appellant.

F I L E D

SEP 4 1990

*Ed Smith*

CLERK OF SUPREME COURT.
STATE OF MONTANA

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Edward P. McClean, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Byron W. Boggs, Esq., Missoula, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
Patricia J. Schaeffer Jordan, Asst. Attorney
General, Helena, Montana
Robert Deschamps, III, County Attorney, Missoula,
Montana


Submitted on Briefs: August 9, 1990

Decided: September 4, 1990

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Defendant William Donnelly appeals a Missoula County jury verdict finding him guilty of incest. We affirm.

Defendant raises five issues for review:

1. Whether the District Court erred in not allowing defense counsel to review the complete psychological record of the victim.

2. Whether the District Court erred in allowing expert testimony that the victim was a sexually abused child.

3. Whether the District Court erred in denying defendant's motion for a mistrial on the basis of surprise.

4. Whether the District Court erred in denying the defendant's motion for a new trial in finding the victim competent to testify.

5. Whether the District Court infringed the defendant's right against self-incrimination when it ordered that parole be conditioned on successful completion of a sex offender's course.

An information filed May 4, 1988 charged defendant William Donnelly with incest in violation of § 45-5-507(1)(3), MCA. The facts constituting the offense were that from 1980 through 1987 defendant, as a continuing course of conduct, had sexual intercourse and sexual contact as defined in § 45-2-101, MCA, with the victim, defendant's minor adopted daughter, "Janey Doe."

Janey Doe testified at trial about a particular incident which occurred in March of 1987. This particular incident began with an argument between Janey Doe and defendant regarding which television

2

program would be watched. The argument progressed into a "tickling match" and culminated into a traumatic sexual experience of oral, anal, and vaginal sex between defendant and Janey Doe. Janey Doe testified that she silently endured years of defendant's sexual abuse before telling anyone for fear that her father would kill her. Defendant flatly denies all allegations of sexual contact with Janey Doe.

The first trial in the District Court, Fourth Judicial District in the County of Missoula, was held on September 14-16, 1988, and resulted in a hung jury. A second trial followed from which this appeal is taken.

At the omnibus hearing for the first trial, defense counsel requested Dr. Cook's psychological records pertaining to Janey Doe's treatment. The District Court denied defendant access to Dr. Cook's records but granted access to Dr. Wedell's records, Janey Doe's child psychologist. On April 21, 1989 at the second trial, the District Court reasserted the previous order denying access to Dr. Cook's records. The District Court also granted defense counsel's request for an update of Dr. Wedell's records.

Discussion in chambers focused on whether an expert could testify that someone has been a victim of sexual abuse. Over objection of the defense, the court allowed such expert testimony. This ruling is at issue in defendant's appeal.

At trial, Dr. Wedell, testified concerning general symptoms often found in children who have been sexually abused, including

3

disruption in development, acting out, withdrawal or aggression, low self-esteem, nightmares and flashbacks, depression, antisocial behavior, and self-destructive behavior. Dr. Wedell also testified that there is a direct link between severe sexual trauma in childhood and the development of multiple personality disorder. She also testified that child victims often block out the sexual trauma and often gradually disclose the sexual abuse over a long period of time. Dr. Wedell concluded that Janey Doe fit the profile of a sexually abused child.

Janey Doe was learning disabled, was frightened and had nightmares that her father would kill her. Following the disclosure she became increasingly self-injurious, pulling her hair out, sticking herself with needles and cutting herself. Janey Doe felt "unclean" and unworthy of visiting the Church of Jesus Christ of Latter Day Saints Temple in 1987. Janey Doe suffered, as well, from multiple personality disorder.

Defense moved for a new trial on the ground that the victim was incompetent to testify on the grounds that she suffered from multiple personality disorder. The motion was briefed, argued, and denied. The District Court order stated that the victim was "able to discern truth from falsity and her credibility is a proper question for the jury."

On July 7, 1989, the jury returned a verdict finding the defendant guilty of incest. The District Court ordered the defendant ineligible for parole until the successful completion of

4

the sexual offender program at the Montana State Prison and until the defendant is thereafter accepted into an aftercare program. A notice of appeal from the judgment was filed on July 27, 1989. The Sentence Review Division affirmed the sentence on January 17, 1990, and this appeal followed. We affirm.

Additional facts will be discussed as necessary.

Issue 1: Whether the District Court erred in not allowing defense counsel to review the complete psychological record of the victim.

In the instant case Janey Doe had a history of psychological problems which predated the sexual abuse she experienced. The State attempted to prove, by way of expert testimony, that Janey Doe's multiple personalities and bizarre self-destructive activities were classic symptoms of "abused child syndrome" and that Janey fit the "abused child" profile. The defense strategy was to present alternate explanations for the observed personality features of the victim. Toward this end, the defense requested the entire psychological and medical file of Janey Doe, particularly the records of Dr. William Cook, and Dr. Wedell. Dr. Cook had seen the victim over an extended period of time prior to Janey Doe's disclosure of sexual abuse. Dr. Wedell, on the other hand, had counselled Janey subsequent to her disclosure of sexual abuse. The District Court examined the requested information in camera and (1) ordered that the records of Dr. Cook were protected

from discovery; and (2) granted defense counsel access to Dr. Wedell's complete treatment file of Janey Doe.

In its order, the District Court balanced the needs of the defense to have access to exculpatory evidence against the privacy interests of Janey Doe. The court found that the requested records from Dr. Cook were not exculpatory and not necessary for the preparation of the defense. For these reasons, the District Court denied defendant's motion for the release of Dr. Cook's records. We agree with the District Court's order.

Appellant claims the denial of access to the victim's past psychological records denied him the right to be represented by counsel, the right to confront the witnesses against him, and the right to compel the attendance of witnesses under the Montana Constitution, Article II, Section 24. These federal constitutional issues have already been decided against defendant by the United States Supreme Court in Pennsylvania v. Ritchie (1987), 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40. Defendant does not show, with citation to any authority, that Article II, Section 24 of the Montana Constitution provides broader guarantees of confirmation and compulsory process than those established by the United States Supreme Court in Ritchie. As such, we refuse to interpret the Montana Constitution more expansively as defendant now urges.

Moreover, this Court has recently rejected a similar argument in State v. Reynolds (Mont. 1990), 792 P.2d 1111, 47 St.Rep. 1143. In Reynolds we held, as defendant concedes, that defense counsel's

6

right to review the medical and psychological records of the victim in an incest case is outweighed by the child's right to confidentiality under the statutes. Our holding in Reynolds controls this issue here.

Here, the District Court reviewed the requested psychological records in camera. After in camera inspection the District Court found that the information was not exculpatory nor necessary for the preparation of a defense. Pursuant to this finding the District Court ruled that the requested information was privileged since the testimonial privileges protecting medical and psychological records outweigh the defendant's limited right to such information. This in camera inspection by the District Court suffices to protect the confrontation rights of the defendant. Due to the privileged status of the medical and psychological records requested by defendant, we hold that defense counsel's right to review the medical and psychological records of the victim in an incest case is outweighed by the child's right to confidentiality under the statutes. Sections 41-3-205, 26-1-807, MCA.

The defendant also claims that he was denied his right to confront witnesses and his due process rights because of the District Court's refusal to allow the defendant access to all of Janey Doe's medical and psychological records. The right of confrontation is a trial right, guaranteeing an opportunity for effective cross-examination. The right of confrontation is not a rule equivalent to a constitutionally compelled rule of pretrial

7

discovery. As long as the defendant was not prevented from cross-examining the adverse witnesses his right to confront witnesses has not been violated. Ritchie, 480 U.S at 54, 107 S.Ct. at 1000, 94 L.Ed.2d at 55.

We note our holding in a recent case, State v. Thiel (Mont. 1989), 768 P.2d 343, 46 St.Rep. 182. In Thiel the district court denied defendant access to the victim's child abuse files. We held that this ruling did not violate defendant's right to confront his accusers since defendant was afforded the opportunity to cross-examine the adverse witnesses. Thiel, 768 P.2d at 345, 46 St.Rep. at 185.

The reasoning in Thiel can be applied to the facts of this case. Here, defendant requested and was denied access to certain medical and psychological records of the victim in the possession of private third parties. The defendant was afforded the opportunity to cross-examine all adverse witnesses. Furthermore, the defendant, as the victim's father, was well aware of the victim's medical and psychological history. Had there been anything in that history relevant to the victim's bias, motive or prejudice, defendant would have been aware of this. Yet, defense counsel made only a general request for all the records without establishing a basis for his claim that they contained material exculpatory evidence. Under these circumstances the District Court acted properly in denying defendant access to Dr. Cook's psychological records pertaining to Janey Doe. The defendant's

8

rights were fully protected by the District Court's <u>in</u> <u>camera</u> study of the requested psychological records pursuant to Montana's child abuse confidentiality statute, § 41-3-205, MCA. Relying on <u>Ritchie</u> and <u>Thiel</u>, we hold that defendant's rights to confront his accusers were preserved in the instant case.

Issue 2: Whether the District Court erred in allowing expert testimony that the victim was a sexually abused child.

The defendant argues that the District Court violated his rights to due process and to a jury trial by allowing expert testimony, over defendant's objection, that the victim was a sexually abused child.

As a secondary issue, defendant complains that the expert witness was also allowed to testify concerning the characteristics of sex offenders. We shall not entertain this secondary issue. Defendant failed to object at trial to the expert testimony on the myths about sex offenders and general characteristics of sex offenders. Therefore this issue is not properly before this Court on appeal. We have previously stated that this Court will not entertain the issue on appeal when expert testimony in child sexual abuse cases has not been objected to at trial as improper. State v. Eiler (1988), 234 Mont. 38, 52, 762 P.2d 210, 219; State v. Patton (1979), 183 Mont. 417, 600 P.2d 194.

The admissibility of expert testimony was debated in pretrial proceedings before the District Court in this case and decided

9

against defendant. The District Court allowed expert testimony as to whether Janey Doe had been subject to sexual abuse, but ruled that the precise issue of credibility could not be addressed in a final conclusion of the expert.

The issue of whether expert testimony is admissible concerning the credibility of a child alleged to have been the victim of sexual abuse is well settled in Montana. The District Court order allowing such testimony is consistent with our opinion in State v. Geyman (1986), 224 Mont. 194, 729 P.2d 475. In Geyman we held that expert testimony is admissible "for the purpose of helping the jury to assess the credibility of a child sexual assault victim." Geyman at 200, 729 P.2d at 479. Expert testimony offered for this purpose is admissible so long as it does not impinge upon the jury's obligation to decide ultimately the victim's credibility. Dr. Wedell's testimony as detailed in the statement of facts "merely enlightened the jurors on a subject with which many or most jurors have no common experience they can use to judge the victim's credibility." (Emphasis added.) Geyman at 200, 729 P.2d at 479. The testimony of Dr. Wedell did not impinge upon the jury's obligation to decide Janey Doe's credibility. The District Court was proper in allowing expert testimony that Janey Doe fit the profile of a sexually abused child. We hold that defendant's rights to due process and to a jury trial were not violated by the District Court in allowing this expert testimony.

10

Issue 3: Whether the District Court erred in denying defendant's motion for mistrial on the basis of surprise.

The defendant claims he was substantially prejudiced when the State's expert witness changed her testimony during the second trial from that of the first trial and from the opinion stated in her professional notes. Defendant bases its claims of substantial prejudice on surprise.

At the first trial, Dr. Wedell testified that Janey Doe had been sexually abused. Dr. Wedell based this testimony on her initial diagnosis that Janey Doe suffered from "post-traumatic stress disorder with a major depressive episode and identity disorder." At the second trial, Dr. Wedell discarded this initial diagnosis and replaced it with an evolving diagnosis of emerging multiple personality disorder, based upon the fact that Janey Doe would present herself at therapy sessions in completely different ways. Again, Dr. Wedell concluded that Janey Doe was a victim of sexual abuse.

The defendant claims this change in testimony was prejudicial error based on surprise. However the record shows that there was at least one reference to this second diagnosis of multiple personality disorder in the first trial. Moreover, Dr. Wedell's notes on Janey Doe's therapy, which were provided to defense counsel, make several references to Janey's multiple personality disorder. For instance, a note dated October 31, 1988 contained: "Multiple personalities? [Janey Doe's mother] has been recognizing

11

2 or more very different [Janey Does]." A note dated February 1, 1989 contained: "We discussed my concern that the mood swings are more than just that and may reflect multiple personalities." A note dated February 29, 1989 contained: "I am more and more questioning a possible diagnosis of multiple personality disorder for this young woman." A note dated April 19, 1989 quoted Janey Doe as inquiring whether Dr. Wedell thought Janey was "2 people." In view of all of these entries in the notes given to defense counsel, we hold his claim of surprise is not substantiated.

In any event, the change in diagnosis from post-traumatic stress disorder with major depression and identity disorder to multiple personality disorder did not alter the ultimate conclusion, at both trials, that the child had been sexually abused. Furthermore, the changed diagnosis did not represent exculpatory and material information which the prosecution has a constitutional or statutory duty to disclose to the defendant. Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

Defense counsel argues that had he known about the victim's multiple personalities, he would have cross-examined the victim about the disorder. Defense counsel suggests defendant was denied the right to cross-examine witnesses by not being informed about the victim's disorder. This argument is without merit. Since the victim was expressly made available for recall, defense counsel had the opportunity to question the victim about items appearing in the

12

psychologist's notes, and did not do so. The District Court did not err in denying defendant's motion for mistrial.

Issue 4: Whether the District Court erred in denying the defendant's motion for a new trial in finding the victim competent to testify.

The defendant argues that the victim was incompetent to testify since she suffered from multiple personality disorder. Defendant contends that her two other personalities would have given inconsistent testimony had they emerged. The District Court ruled, in its order dated June 30, 1989, that the victim was competent to testify and that the victim's credibility was properly a question for the jury. We agree with the District Court's order.

The determination of competency of a witness to testify is within the sound discretion of the district court and will not be overturned unless an abuse of discretion is demonstrated. State v. Newman (Mont. 1990), 790 P.2d 971, 47 St.Rep. 711. This Court has recently reiterated that "what is important is the capacity to remember the occurrence and the ability of the witness to relate her impressions of what occurred." Newman, 790 P.2d at 974, 47 St.Rep. at 715; quoting Eiler at 43, 762 P.2d at 213. Any inconsistencies within her testimony or possible fabrication would affect Janey Doe's credibility not her competency. Eiler at 43, 762 P.2d at 213-14.

Here, the District Court determined that Janey Doe had the

capacity to express herself, to remember what occurred, and to understand her duty to tell the truth. Janey Doe was fifteen years old when she testified. The District Court assessed the competency of the witness to testify based on its observation of the witness and concluded:

> It is true that [Janey Doe] suffers from extensive and severe emotional damage because of the incestuous actions of the defendant, William Donnelly. However, she is able to discern the truth from falsity and her credibility is properly a question for the jury.

The defense counsel has failed to point to evidence, nor have we been able to find evidence, in the record which would support a finding that the District Court abused its discretion in finding the victim competent to testify. The District Court observed the witness and concluded there was no evidence in her demeanor which would suggest she was incompetent to testify. Furthermore, none of the testimony from any of Janey's emerging personalities recanted her testimony which incriminated her sexually abusive father. The District Court in this case did not abuse its discretion in deciding that Janey Doe understood her duty to tell the truth and had the ability to clearly communicate her accounts of the events in question.

Issue 5: Whether the District Court infringed the defendant's right against self-incrimination when it ordered that defendant be ineligible for parole until he completes a sex offender's course.

14

The District Court, after reviewing a pre-sentence investigation report, ordered the defendant "will be ineligible for parole until the successful completion of the sexual offender program at the Montana State Prison and the defendant is accepted into an aftercare program." (Emphasis added.) Defendant takes no exception to this condition on parole imposed by the District Court. However, in order to be accepted into the sexual offender program and receive treatment, defendant must admit to incest of which he was convicted. Defendant contends that if he does not admit to incest, he will be denied treatment, and thus denied parole. As such, defendant argues that these requisite admissions are, in fact, compelled in violation of his privilege against self-incrimination.

The Fifth Amendment protects persons from testifying against themselves. We fail to find the defendant was compelled to testify in violation of his privilege against self-incrimination.

Our holding in Matter of C.L.R. (1986), 211 Mont. 381, 685 P.2d 926, controls. In Matter of C.L.R., the defendant was being tried for homicide of his girlfriend's minor child. The child died as a result of internal injuries sustained from being struck by defendant. At the time of defendant's arrest, his girlfriend was pregnant. Proceedings were begun, concurrent with the homicide trial, to terminate his parental rights. Defendant moved to stay these proceedings until his criminal proceedings were terminated.

Defendant reasoned that in order to testify at his hearing to

15

terminate parental rights, he would jeopardize his Fifth Amendment rights to remain silent. He contended that if he refused to testify, he would lose his parental rights. In this case we said:

> [A]ppellant suffered no compulsion to testify, therefore no violation of the Fifth Amendment occurred. Appellant clearly could remain silent if he so desired without fear of certain penalty for not testifying. Appellant's determination to testify hinges upon a tactical decision and not penalty of certain loss of parental rights, as he asserted.

Matter of C.L.R. at 387, 685 P.2d at 929. We held that parental rights proceedings failed to infringe upon defendant's Fifth Amendment rights even though testimony at the proceeding could be used at the criminal proceeding. We felt no compulsion occurred. Id. This decision is controlling.

The key to this rests on whether the defendant was compelled to testify or was merely required to make a "tactical" decision regarding his parole. Here, defendant's decision to remain silent is a tactical one, not a compelled one. Defense counsel argues that, in reality, defendant's testimony is in fact compelled since it is a prerequisite for parole. It is possible that defendant may be paroled sooner if he admits to incest than if he remains silent. However, defendant may remain silent if he so chooses, and still possibly be paroled at some future date based on good behavior.

Furthermore, failure to admit to incest will not result in certain penalty to defendant, it will only result to preserve his current ineligible parole status. In this case, the District Court

ordered that the defendant was ineligible for parole <u>until</u> the satisfaction of a condition subsequent. The condition subsequent is partially satisfied by defendant's successful completion of the sexual offender program at Montana State Prison. Failure to satisfy this condition subsequent, i.e., failure to satisfactorily complete the sex offender program, will not result in a penalty but will merely result in defendant's continued ineligibility for parole. We therefore hold that the District Court acted properly in conditioning defendant's parole on the satisfaction of Montana State Prison's sexual offender program and that defendant's rights against self-incrimination were not violated thereby.

We affirm the District Court.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Diane G. Barz_

_R. C. McDonough_

_William E. Hunt_
Justices