No. 90-493

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

    Plaintiff and Respondent,

v.

DONALD GLENN IMLAY,

    Defendant and Appellant.

FILED

JUN 18 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Billy B. Miller, Miller & Cook,
        Great Falls, Montana

    For Respondent:

        Honorable Marc Racicot, Attorney General, Helena
        Montana; Elizabeth L. Griffing, Assistant Attorney
        General, Helena, Montana; Patrick L. Paul, Cascade
        County Attorney, Great Falls, Montana; Kim Schulke
        Chief Deputy County Attorney, Great Falls, Montana

Submitted on Briefs:  March 28, 1991

Decided:  June 18, 1991

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Following a jury trial, the defendant, Donald Glenn Imlay, was convicted in District Court of sexual assault, a felony, in violation of § 45-5-502, MCA. Based on that conviction, he was sentenced by the District Court to five years in the Montana State Prison. However, all but 35 days of that sentence were suspended, and the defendant was placed on formal probation, under certain conditions, including the condition that he enroll in and complete a sexual therapy program. When the defendant enrolled in, but was unable to complete the sexual therapy program, his suspended sentence was revoked and he was ordered imprisoned at the Montana State Prison for the remainder of his five-year term. The defendant appeals from the District Court's order revoking his suspended sentence. We reverse the order of the District Court.

On appeal, the defendant raises several issues. We find the following issue, as restated by this Court, to be controlling:

Can a criminal defendant, as a condition of a suspended sentence, be compelled to admit that he is guilty of the crime of which he has been accused and convicted?

**FACTUAL BACKGROUND**

On May 9, 1989, the State of Montana was granted leave to file an Information charging the defendant with three counts of sexual assault, a felony. On September 5, 1989, that Information was amended so that the acts complained of were combined into one count. The basis for the Information was the allegation that on

2

April 11, 1989, the defendant fondled the vaginal area of a seven-year-old girl while she was present at his Great Falls grocery store. The Information was based on statements made by the girl to her teacher after she arrived at school several hours late.

This case went to trial on September 11, 1989, and the jury returned its verdict on September 13, 1989, finding the defendant guilty of the crime charged.

Prior to sentencing, the usual pre-sentence investigation was conducted, including a psychological evaluation of the defendant. As a result of that investigation, the District Court found that the defendant was a 56-year-old widower who had raised four adult children and had an extensive history of full-time employment. He had no prior criminal record, nor was there any prior history of any complaints of similar conduct by the defendant.

The psychologist who examined the defendant, as part of the pretrial investigation, concluded that he was suffering from post-traumatic stress syndrome and was in a severely depressed state of mind. He recommended that the defendant not be incarcerated, but that he be involved in a mental health therapeutic program with psychiatric work and counseling.

Based upon its pre-sentence investigation, the District Court found that the defendant was not a dangerous person, that his offense was an isolated incident, and that it would not be repeated in the future. The court also found that the defendant was

suffering from medical problems, and that incarceration in the State Prison was not an appropriate penalty.

The defendant's sentencing hearing was held on October 17, 1989. On that same date, the District Court sentenced the defendant to five years in the Montana State Prison. However, execution of the sentence was suspended, except for the 35 days he had already served in the Cascade County Jail. He was placed on formal supervised probation under the rules and regulations of the Adult Probation and Parole Bureau and was ordered to enroll in a sexual therapy program at his own expense, and to continue in that program until it was no longer deemed necessary by his therapist. The specific sentence provision regarding sexual therapy was as follows:

> The defendant is to immediately enroll in a sexual therapy program at his own expense and continue said program until his therapist deems further counseling and therapy unnecessary. The Court would recommend that the defendant obtain his therapy at the sexual offender treatment program located in Helena, Montana.

As conditions of his suspended sentence, the defendant was also ordered to pay any counseling costs incurred by the victim and prohibited from being around children unless another adult was present.

On June 8, 1990, the County Attorney petitioned the District Court for revocation of the defendant's suspended sentence for two reasons: (1) the State contended that the defendant was not gainfully employed; and (2) the State alleged that the defendant

4

had not completed the sexual treatment program which was a condition of his suspended sentence.

The defendant denied violating the terms of his suspended sentence, and an evidentiary hearing was conducted on August 31, 1990. At that hearing, the defendant's probation officer, and the counselor to whom he had been referred for sexual therapy, testified. The defendant also testified on his own behalf.

The defendant testified that at that time he was living with his mother in Absarokee where he had moved following trial because he no longer had a business, a job, or any income.

He had interviewed for and sought work as an electrician, and as a custodian, but was unable to satisfy the physical requirements for either job. He suffered from high blood pressure and degenerative joint disease.

When unable to find employment, the defendant had applied for vocational rehabilitation through the State Department of Social and Rehabilitation Services. After an independent medical examination, he had apparently qualified for those services and was being retrained by SRS to do leather work which he was performing at his mother's home. He had sold some of the work and had orders for more items which he had been unable to complete.

He testified that in order to comply with the court's order regarding enrollment in a sex offender program he contacted his probation officer, who referred him to Mike Sullivan, a counselor in Billings, Montana. He scheduled and attended a number of

5

counseling sessions, but was finally advised that he did not qualify for Sullivan's treatment program because he would not admit that he was guilty of the crime of which he had been charged and convicted. He then talked to Ron Silvers, the director of the sexual offender program in Helena, and was told that he would not be admitted to that program either.

Michael Sullivan testified that he is a licensed clinical social worker practicing in Billings, and was director of a program known as South Central Treatment Associates. He has a bachelor's degree in psychology, a master's degree in associate work, and is a licensed social worker in the State of Montana. At the time of the defendant's hearing, Sullivan had been involved in the treatment of sexual offenders for approximately five years.

The defendant first saw Mr. Sullivan, by referral from his probation officer, on November 20, 1989, and saw him on five subsequent occasions over the next six months. Each appointment was scheduled by the defendant. The defendant attended every scheduled appointment. He was described by Sullivan as pleasant, friendly, never angry or abusive, and always punctual.

Sullivan performed a series of tests on the defendant. There were no indications in those tests that the defendant was capable of violent conduct. However, from those tests and his contacts with the defendant, Sullivan formed the impression that the defendant was not amenable to outpatient sexual offender treatment because he did not admit that he committed a sexual offense.

6

Sullivan testified that the defendant's denial made it impossible for him to treat him in their program. He also testified that there was no other outpatient sexual therapy program in the State of Montana which would treat a sexual offender who denied that he was guilty of sexual misconduct.

He confirmed that after the defendant had been rejected from his program, the defendant had sought treatment from Ron Silvers at the sexual therapy program in Helena, and that he (Sullivan) had been contacted by Silvers to determine why the defendant had been unacceptable for the Billings program.

Sullivan recommended a form of inpatient treatment, which is more structured and continuous, because in such a program it is more difficult for a patient to maintain defensive postures, such as denial. He testified that the only inpatient treatment program in the State of Montana was the one at the Montana State Prison.

Based upon the foregoing evidence, the District Court found that the State's complaint about the defendant's lack of employment was not well founded. The court found that the defendant was making a bona fide effort to maintain employment and was actively pursuing vocational rehabilitation.

However, regarding the State's second basis for its petition to revoke the suspended sentence, the court made the following conclusion:

> The Court concludes that the defendant has violated the condition of his suspended sentence by not enrolling (not being amenable to treatment and hence, not acceptable

7

into an out-patient treatment program) in a sex offender treatment program and said violation was proven by a preponderance of the evidence.

. . . Because the only viable alternative is an in-patient treatment program, the Court concludes that the defendant's suspended sentence must be revoked and the defendant ordered to serve FIVE (5) years in the Montana State Prison with credit for 35 days.

* * * *

It is recommended to the Warden of the Prison that the defendant not be eligible for parole until he has completed the sexual offender treatment program at the Prison. However, it is also recommended that upon completion of the program, the defendant be considered for parole. The defendant is designated as a non-dangerous offender for parole eligibility purposes.

The defendant, through his attorney, objected at the time that the sentence was revoked on the grounds that the District Court was conditioning suspension of the defendant's sentence on an admission of guilt, and cited authority to the District Court that it could not force the defendant to plead guilty. The issue previously stated, therefore, was properly preserved for appeal.

## DISCUSSION

While the District Court's order revoking the defendant's suspended sentence is predicated upon the defendant's failure to enroll in a sex offender treatment program, it is clear that the defendant's incarceration at the Montana State Prison is directly related to his refusal to admit that he committed a crime. The defendant made every other effort possible to enroll in and complete a sex offender treatment program. He sought a referral from his probation officer. He followed up that referral by

8

scheduling not one, but six consecutive appointments. He attended every appointment in a timely fashion, and other than admitting his guilt, cooperated in every manner possible while at those appointments. When he was rejected by the counselor with whom he had spent six months, he tried to find another sex offender treatment program that would admit and treat him, and was rejected a second time. Finally, he was advised that there was no outpatient sex offender treatment program in Montana that would accept him.

It is clear that the only thing the defendant has failed to do is admit that he committed the crime for which he was convicted. Whether or not punishment can be augmented because of a defendant's refusal to admit guilt, even after he has been convicted, is a question on which the federal courts are not in agreement. Furthermore, this Court has made contradictory statements in answer to that same issue.

The majority of federal courts of appeal which have addressed this issue follow the decision of the United States Court of Appeals for the Fifth Circuit in Thomas v. United States, 368 F.2d 941 (5th Cir. 1966).

In that case, prior to imposing sentence, the district court judge advised the defendant that if he confessed his guilt the court would take his confession into consideration in determining the length of his sentence, but that if he persisted in his denial of guilt, that denial would also be taken into account. Because

9

the defendant chose to continue denying guilt, he was sentenced to the maximum term permitted by law. That sentence was vacated by the Fifth Circuit, based on its conclusion that the alternatives presented to the defendant violated his Fifth Amendment right not to be a witness against himself. The Court of Appeals acknowledged that the defendant had already been convicted, but pointed out:

> It must be remembered that, at the time of his allocution, Thomas had not been finally and irrevocably adjudged guilty. Still open to him were the processes of motion for new trial (including the opportunity to discover new evidence), appeal, petition for certiorari, and collateral attack. Indeed, appeal is now an integral part of the trial system for finally adjudicating the guilt or innocence of a defendant.
>
> The two "ifs" which the district court presented to Thomas placed him in a terrible dilemma. If he chose the first "if," he would elect to forego all of the above-noted post-conviction remedies and to confess to the crime of perjury, however remote his prosecution for perjury might seem. Moreover, he would abandon the right guaranteed by the Fifth Amendment to choose not to be a witness against himself, not only as to the crime of which he had been convicted, but also as to the crime of perjury. His choice of the second "if" was made after the warning that the sentence to be imposed would be for a longer term than would be imposed if he confessed. From the record, it is clear that an ultimatum of a type which we cannot ignore or approve confronted Thomas. Truly, the district court put Thomas "between the devil and the deep blue sea."
>
> * * * *
>
> Thomas suffered the consequences for choosing the second "if" . . . in the form of a longer prison term. When Thomas received harsher punishment than the court would have decreed had he waived his Fifth Amendment rights, he paid a judicially imposed penalty for exercising his constitutionally guaranteed rights. Upon this ground alone, we think that his sentence is "subject to collateral attack," and have *little* doubt as to the

10

authority and duty of the district court to vacate the sentence.

Thomas, 368 F.2d at 945-46. In accord with Thomas, are Scott v. United States, 419 F.2d 264 (D.C.Cir. 1969); United States v. Laca, 499 F.2d 922 (5th Cir. 1974); United States v. Wright, 533 F.2d 214 (5th Cir. 1976). In Poteet v. Fauver, 517 F.2d 393 (3d Cir. 1975), the United States Court of Appeals for the Third Circuit concluded that augmentation of a post-conviction sentence based on refusal to admit guilt violated the due process clause of the Fourteenth Amendment of the United States Constitution.

In the past, this Court has given apparent approval to the Thomas rule. Although the case of In the Matter of Jones, 176 Mont. 412, 578 P.2d 1150 (1978), was decided on other grounds, we cited with approval the following rule of law in that case:

> While the sentencing judge may take into account his belief that the defendant was not candid with the court this is to be distinguished from the rule that a sentence may not be augmented because a defendant refuses to confess or invokes his privilege against self-incrimination. *Fox v. State*, (1977 Alaska), 569 P.2d 1335, 1338. See: *United States v. Garcia*, (3rd Cir., 1976), 544 F.2d 681, 685; *United States v. Acosta*, (5th Cir., 1975), 509 F.2d 539, cert. denied, 423 U.S. 891, 96 S.Ct. 188, 46 L.Ed.2d 122 (1975); *United States v. Rogers*, (5th Cir., 1974), 504 F.2d 1079, 1085, cert. denied, 422 U.S. 1042, 95 S.Ct. 2655, 45 L.Ed.2d 693 (1975).

The only Federal Circuit which appears to have arrived at a contrary conclusion is the Ninth Circuit.

In Gollaher v. United States, 419 F.2d 520 (9th Cir. 1969), the Ninth Circuit Court of Appeals considered the Thomas decision and chose not to follow it. In that case, the defendant was also

11

given a stiffer sentence because of his refusal to admit guilt after he was convicted, and challenged that sentence as a violation of his Constitutional privilege against self-incrimination. However, the Ninth Circuit, on balance, placed greater importance on the criminal justice system's objective of rehabilitation, than on a defendant's continued right to deny guilt. In rejecting the Thomas rationale, the Ninth Circuit has stated:

> This case presents a dilemma which every trial judge faces at the time of sentence. It is almost axiomatic that the first step toward rehabilitation of an offender is the offender's recognition that he was at fault. In the present state of the criminal law, there is no doubt that punishment is still a consideration in the imposition of sentence, especially where non-violent or economic crimes are involved. But to the extent that rehabilitation is the objective, no fault can be found of the judge who takes into consideration the extent of a defendant's rehabilitation at the time of sentence.

> \* \* \* \*

> Gollaher chose to insist upon his innocence. The judge, bound by the jury's verdict and apparently also being firmly convinced by the evidence that Gollaher was guilty, proceeded accordingly. He had before him a man unwilling to take the first step toward rehabilitation and he imposed sentence accordingly. Gollaher's Fifth Amendment rights were not infringed.

Gollaher, 419 F.2d at 530-31.

Our prior decision in State v. Donnelly, 47 St.Rep. 1600, 798 P.2d 89 (1990), appears to be in accord with the Ninth Circuit's decision in Gollaher. In Donnelly, we were asked to decide whether a defendant, who was already imprisoned at the Montana State Prison, was denied his right to avoid self-incrimination when he was denied parole until he completed a sex offender course at the

12

Prison. Interestingly, the evidence in that case was that in order to be accepted into the inpatient sexual offender program at the Prison, that defendant also had to admit that he committed the crime of which he was convicted. (Therefore, if the trial court's objective in this case was to obtain treatment for Donald Imlay, imprisonment does not appear to be the solution.) At any rate, we found that denying probation under those circumstances did not violate the defendant's privilege against self-incrimination. Our decision appears to have been based on the following conclusion:

> Here, defendant's decision to remain silent is a tactical one, not a compelled one. Defense counsel argues that, in reality, defendant's testimony is in fact compelled since it is a prerequisite for parole. It is possible the defendant may be paroled sooner if he admits to incest than if he remains silent. However, defendant may remain silent if he so chooses, and still possibly be paroled at some future date based on good behavior.
>
> Furthermore, failure to admit to incest will not result in certain penalty to defendant, it will only result to preserve his current ineligible parole status. In this case, the district court ordered that the defendant was ineligible for parole *until* the satisfaction of a condition subsequent. The condition subsequent is partially satisfied by defendant's successful completion of the sexual offender program at Montana State Prison. Failure to satisfy this condition subsequent, i.e., failure to satisfactorily complete the sex offender program, will not result in a penalty, but will merely result in defendant's continued ineligibility for parole.

Donnelly, 47 St.Rep. at 1607-08, 798 P.2d at 96.

Without debating the merits of the foregoing conclusion from Donnelly, it is clear that in this case the defendant is being subjected to a penalty that he would not otherwise be subjected to

13

if he would simply admit his guilt. That penalty is that he serve time in the Montana State Prison.

Even though the defendant has already been convicted of the crime that he denies, our system still provides, as noted in the Thomas decision, for opportunities to challenge that conviction. For example, the defendant still had the right to challenge his conviction, based on newly discovered evidence, or by collateral attack. These are important rights guaranteed to every defendant under our criminal justice system, but would be rendered meaningless if the defendant could be compelled to admit guilt as a condition to his continued freedom. Furthermore, while such a defendant would be foreclosed from invoking the protection of such procedures to establish his innocence, the reliability of an admission of guilt under such circumstances would be highly suspect. In addition, by admitting guilt in this case, the defendant would have to abandon his right guaranteed by the Fifth Amendment, not only as to the crime for which he has been convicted, but also to the crime of perjury. He testified in his own defense during his trial and denied committing the offense with which he was charged.

Under these circumstances, and absent any grant of immunity, we believe that the better reasoned decisions are those decisions which protect the defendant's constitutional right against self-incrimination, and which prohibit augmenting a defendant's sentence because he refuses to confess to a crime or invokes his

14

privilege against self-incrimination.   To the extent that our decision in <u>Donnelly</u> is inconsistent with this opinion, that part of the <u>Donnelly</u> decision is overruled.

The sentence of the District Court is vacated and this case remanded to the District Court for further proceedings not inconsistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices