JUSTICE NELSON
dissenting.
I dissent from the Court’s decision in this case. In summary, I would hold that under our interpretation of State v. Imlay (1991), 249 Mont. 82, 813 P.2d 979, cert. dismissed as improvidently granted, (1992), 506 U.S. 5, 113 S.Ct. 444, 121 L.Ed.2d 310, even if Fuller had been dismissed from or refused treatment under the sex offender treatment program because he invoked his Fifth Amendment right to not incriminate himself by disclosure of other uncharged sex offenses, his probation could not have been revoked. Accordingly, Fuller was under no explicit or implicit threat of sanction or penalty for exercising his Fifth Amendment right to remain silent. He did not, in fact, face a “classic penalty” situation or “Hobson’s choice” that would have rendered his right against self-incrimination self-executing. Therefore, he was required to actually invoke that right, and in failing to do so, he waived his Fifth Amendment protection against self-incrimination and subjected himself to criminal prosecution for the other crimes which he voluntarily disclosed.
The Fifth Amendment’s protection against compelled self-incrimination not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. Minnesota v. Murphy (1984), 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409, 418 (quoting Lefkowitz v. Turley (1973), 414 U.S. 70, 77, 94 S.Ct. 316, 322, *173 38 L.Ed.2d 274, 281). See also Seizure of $23,691.00 in U.S. Currency (1995), 273 Mont. 474, 905 P.2d 148, 152, where we cited with approval this same rule.
However, except in certain circumstances hereafter discussed, the privilege against self-incrimination is not “self-executing.” Rather, it must be affirmatively claimed. In other words, a general obligation to appear and answer questions truthfully does not in itself convert a person’s otherwise voluntary statements into compelled ones. A person’s answers to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of privilege. Murphy, 465 U.S. at 427, 104 S.Ct. at 1142. If the person desires the protection of the privilege he must claim it or his answers will not be deemed compelled for Fifth Amendment purposes. Murphy, 465 U.S. at 427, 104 S.Ct. at 1142 (quoting United States v. Monia (1943), 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376, 380).
Moreover, “if a person under compulsion to testify makes disclosures instead of claiming the privilege, the government has not ‘compelled’ him to incriminate himself,” Murphy, 465 U.S. at 427, 104 S.Ct. at 1142 (quoting Garner v. United States (1976), 424 U.S. 648, 654, 96 S.Ct. 1178, 1182, 47 L.Ed.2d 370, 377) and those disclosures are deemed voluntary and may be used against him in a subsequent criminal prosecution. Murphy, 465 U.S. at 440, 104 S.Ct. at 1149. This is true even where the government should reasonably expect the questions to elicit incriminating evidence (Murphy, 465 U.S. at 429, 104 S.Ct. at 1143), where the nature of the questions asked are incriminating (Murphy, 465 U.S. at 428, 104 S.Ct. at 1142-43 (quoting Monia, 317 U.S. at 433, 63 S.Ct. at 413 and citing United States v. Mandujano (1976), 425 U.S. 564, 574-75, 96 S.Ct. 1768, 1775-76, 48 L.Ed.2d 212, 221)) or where the person alone is reasonably aware of the incriminating tendency of the questions (Murphy, 465 U.S. at 428, 104 S.Ct. at 1142-43 (Brennan, J., concurring) (quoting Roberts v. United States (1980), 445 U.S. 552, 562 n*, 100 S.Ct. 1358, 1365 n*, 63 L.Ed.2d 622, 632 n*)). If the person being questioned chooses to answer, his choice is considered to be voluntary because he was free to claim the privilege, because he was privileged to decline to answer and because he would suffer no penalty if he did so. Murphy, 465 U.S. at 429, 104 S.Ct. at 1143.
Here, as the majority recognizes, it is undisputed that Fuller failed to assert his Fifth Amendment privilege and decline to disclose evidence of his other uncharged sex crimes in response to questions *174 posed by the therapist. Notwithstanding, Fuller claims that his case is within one of the exceptions to the above-stated rule that the Fifth Amendment’s protection against self-incrimination is not self-executing, but, rather, must be affirmatively asserted. The Court in Murphy described this exception, known as the “classic-penalty” situation or “Hobson’s choice,” (Murphy, 465 U.S. at 443, 104 S.Ct. at 1151 (Marshall, J., dissenting)). The Court stated:
The general rule ... has also been deemed inapplicable in cases where the assertion of the privilege is penalized so as to “foreclos[e] a free choice to remain silent, and ... competí] ... incriminating testimony.” Garner 424 U.S. at 661, 96 S.Ct. at 1186.
* * * *
In each of the so-called “penalty” cases, the State not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions “capable of forcing the self-incrimination which the Amendment forbids. Leftowitz v. Cunningham (1977), 431 U.S. 801, 805, 97 S.Ct. 2132, 2135, 53 L.Ed.2d 1, 7.
* * * *
These cases make clear that “a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.” Lefkowitz, 431 U.S. at 805, [97 S.Ct. at 2135-36].
* * * *
[I]f the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer’s answers would be deemed compelled and inadmissible in a criminal prosecution.
Murphy, 465 U.S. at 434-35, 104 S.Ct. at 1146.
When faced with a classic penalty situation or Hobson’s choice — i.e. being forced to choose between self-incrimination and suffering a sanction or penalty for choosing to remain silent — the Fifth Amendment privilege against self-incrimination is “self-executing.” It does not have to be affirmatively asserted or claimed. See, Cunningham, 431 U.S. at 805, 97 S.Ct. at 2135-36; Turley, 414 U.S. at 79-84, 94 S.Ct. at 323-26; Sanitation Men v. Sanitation Comm’r (1968), 392 *175 U.S. 280, 283-84, 88 S.Ct. 1917, 1919, 20 L.Ed.2d 1089, 1092; Gardner v. Broderick (1968), 392 U.S. 273, 278-79, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082, 1087; Garrity v. New Jersey (1967), 385 U.S. 493, 498-99, 87 S.Ct. 616, 619, 17 L.Ed.2d 562, 566.
Fuller claims, and the majority agrees, that he was faced with just such a classic penalty situation or Hobson’s choice. He argues that he was required to honestly disclose his offending history in order to complete his sex offender program which was, in turn, a requirement of his probation. He contends that he was faced with the choice of truthfully disclosing his uncharged other sex crimes and facing criminal prosecution or not disclosing truthfully and being subject to termination from the sex offender program and revocation of probation.
Fuller’s argument fails, however, because he and the majority ignore his third alternative. Fuller could have asserted his Fifth Amendment right to not incriminate himself. He could have simply refused to say anything about his uncharged sex offenses. This option was available to Fuller because under Imlay, had he chosen to remain silent, the State could not have imposed any sanction whatsoever against him for his assertion of his Fifth Amendment right. It could not have revoked his probation even if his participation in the sex offender program was terminated by reason of his refusal to disclose his uncharged sex offenses. Imlay, 813 P.2d at 985.
The majority ignores the fact that Fuller’s position is premised in large part on his erroneous and unreasonable reading of our decision in Imlay. While in order to reach the result sought, the majority baldly declares that Imlay is beside the point and is irrelevant, it is precisely because of this Court’s decision in Imlay that Fuller’s right against self-incrimination was not self-executing for Fifth Amendment purposes — there was absolutely no sanction which the State could impose on Fuller if he chose to exercise his right to remain silent. Moreover, Fuller did not consider Imlay beside the point or irrelevant. In fact, on brief and at oral argument, Fuller premised his position on his interpretation of our decision in that case, and he spent considerable effort arguing that Imlay did not prohibit the State from revoking his probation if he exercised his Fifth Amendment rights and refused to disclose his prior offending history. As Fuller stated on brief:
Two central questions control the decision in this case. Will the court determine that Minnesota v. Murphy [465 U.S. 420] 104 S. Ct. 1136 [79 L.Ed.2d 409] (1984) controls? Is this court willing to *176 expand its holding in State v. Imlay [249 Mont. 82] 813 P.2d 979 (1991)? (Emphasis added).
However, while Fuller narrowly reads Imlay and argues that our holding in that case would not have precluded the trial court from revoking his probation because “all Imlay prohibits is revocation of a suspended sentence because of refusal to admit guilt to the charged crime,” that clearly is not what our opinion stands for. We stated in Imlay:
[B]y admitting guilt in this case, the defendant would have to abandon his right guaranteed by the Fifth Amendment, not only as to the crime for which he has been convicted, but also to the crime of perjury [since he had testified in is own defense at trial and denied committing the offense with which he was charged.]
Imlay, 813 P.2d at 985 (emphasis added). See also State v. Henrich (1994), 268 Mont. 258, 273, 886 P.2d 402, 411 (stating “Imlay prevents a sentencing court from incarcerating a defendant for refusing to confess to the crime in order to complete treatment that is a condition of a suspended sentence”). The State has correctly interpreted Imlay as precluding the revocation of probation because of the defendant’s refusal to admit to not only the charged crime but to any other crime as well. The District Court correctly interpreted Imlay as mandating that result. We interpret Imlay in the same way.
Moreover, even the United States Supreme Court acknowledged that, clearly, the government cannot constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege. Murphy, 465 U.S. at 438, 104 S.Ct. at 1148. Fuller stands alone in his misreading of Imlay, his position is unreasonable and finds no support in either federal or state law. It is precisely because of our decision in Imlay that Fuller’s Fifth Amendment right against self-incrimination was not self-executing, and it is because of Imlay that the majority decision, here, is wrong. That the majority chooses to disregard Imlay is, accordingly, understandable. Its choice to simply ignore the law does not, however, render its legal analysis correct.
In short, there was nothing that would have prevented Fuller from exercising his Fifth Amendment right and refusing to disclose his offending history. Even if he was terminated from the sex offender program, his probation could not, as matter of state and federal law, have been revoked. While Fuller was, without doubt, faced with a difficult, technical choice as to whether to disclose his sex offending history or to stand on his right to remain silent, he was not, in fact *177 or in law, faced with a classic penalty situation nor with a Hobson’s choice as the majority has erroneously concluded.
In truth, Fuller, who was not sworn, who was not in a custodial interrogation and who was not under a subpoena when he made his disclosures, was faced with even less intimidating pressure than is a person who is compelled to tell the truth upon being required to testify in court, before a grand jury or in some other proceeding where he is under subpoena, is sworn and is under pain of contempt. Even in those circumstances the law is clear that the witness must affirmatively assert his Fifth Amendment privilege, and, in the usual case, must do so on the basis of his own knowledge of his rights, without the benefit of any prior Miranda warning (which is not required, in any event, since there is no custodial interrogation) and without the benefit of counsel. If the witness fails to claim his Fifth Amendment right to remain silent, his statements can be used against him in a subsequent criminal prosecution. See Murphy, 465 U.S. at 427, 430-31, 104 S.Ct. at 1142, 1143-44.
Here, Fuller was at all times represented by counsel from whom he could have sought advice as to the exercise of his Fifth Amendment rights and as to the consequences of his doing so. Knowing that he would have to disclose his sex offending history as part of his sex offender treatment, he could have sought immunity from prosecution during plea negotiations. He availed himself of neither option.
Moreover, the actual record in this case does not support Fuller’s position. Neither the portion of the stipulated facts relied upon by the majority nor any other part thereof state or imply, much less concede, that Fuller was ever told, threatened or led to believe that the exercise of his Fifth Amendment right would result in his being sanctioned.
Rather, as the District Court found, and as Fuller concedes, he was never told or led to believe that the exercise of his Fifth Amendment privilege would result in revocation of his probation, and there is no evidence in the record that Fuller admitted to his prior crimes because he feared revocation if he chose to remain silent. There is no evidence that Fuller was deterred from claiming his Fifth Amendment privilege by the threat of revocation. There is nothing in the stipulated facts which describes any subjective belief on Fuller’s part that he would be sanctioned for exercising his Fifth Amendment right to remain silent or that he was under any real threat, explicit or implicit, that his probation would be revoked.
To the contrary, we are left only with Fuller’s self-serving, after-the-fact justifications for his failure to assert his privilege against *178 self-incrimination and his unreasonable interpretation of Imlay — an interpretation which flies not only in the face of the clear language of that opinion but in the face of Murphy which he and the majority, cite as authority for their position. In this regard, the only reason Fuller relies upon and argues Murphy, is that he misreads Imlay, erroneously maintaining that our decision in that case would permit the revocation of his probation if he had exercised his Fifth Amendment privilege to remain silent. No one agrees with that contention.
While the majority cites Murphy, it does so on the proposition that Fuller’s case and Murphy are factually “far different.” Nothing could be further from the truth. The facts are almost identical. Murphy’s incriminating statements, like Fuller’s, were first made to his sex offender treatment program counselor, and, as here, it was the counselor who reported the previously unknown crimes to the probation officer, who in turn reported to the police. Murphy, 465 U.S. at 423, 104 S.Ct. at 1140.
While the majority states that Murphy’s obligation to tell the truth was only a general obligation, and Fuller’s was “clearly and precisely set out,” this is truly a distinction without a difference. As the Murphy opinion states:
[t]he terms of Murphy’s probation required, among other things, that he participate in a treatment program for sexual offenders at Alpha House, report to his probation officer as directed, and be truthful with the probation officer “in all matters.” Failure to comply with these conditions, Murphy was informed, could result in his return to the sentencing court for a probation revocation hearing.
Murphy, 465 U.S. at 422, 104 S.Ct. at 1139. Accordingly, whether the obligation to be truthful was general or specific, it is clear that Murphy was faced with precisely the same sort of pressure of potential sanction for lying (revocation of probation and imprisonment) as was Fuller. Of more importance is the fact that in neither Murphy nor in the instant case was there any proscription of the defendant’s freedom to decline to answer particular questions and no suggestion that either’s probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution. See, Murphy, 465 U.S. at 437, 104 S.Ct. at 1147-48.
Moreover, any implication that Fuller — a person who was already well acquainted with the criminal justice system — did not appreciate or understand his right to remain silent is ludicrous. As the Supreme Court noted:
*179 [a]t this point in our history virtually every schoolboy is familiar with the concept, if not the language, of the [Fifth Amendment].
Murphy, 465 U.S. at 437, 104 S.Ct. at 1147 (citing Michigan v. Tucker (1974), 417 U.S. 433, 439, 94 S.Ct. 2357, 2361, 41 L.Ed.2d 182, 190).
Contrary to the majority’s opinion, Murphy and the instant case are on all fours, and the same result should, accordingly, obtain. Yet, incredibly, this Court relies on Murphy to come to precisely the opposite result on the same essential facts.
As in Murphy, Fuller was not faced with a classic penalty situation or a Hobson’s choice. His right to be free from self-incrimination was not self-executing, and his incriminating disclosures of his prior uncharged sex crimes were not compelled within the meaning of the Fifth Amendment. As a result, he could not prevent his volunteered disclosures from being used against him in the subsequent criminal prosecutions at issue here. See Murphy, 465 U.S. at 437-40, 104 S.Ct. at 1147-49. The majority’s conclusion to the contrary is wrong.
The foregoing aside, it also deserves mention that the ramifications of today’s opinion go beyond the mere reversal of Fuller’s conviction and his premature release from a much-deserved, lengthy term of imprisonment. Rather, the greater mischief in the majority’s decision is that in failing to apply to this case the well-established rules and principles that a correct Fifth Amendment analysis requires, we have now effectively established a rule of absolute immunity from prosecution for criminal defendants who confess (and who now, according to our opinion, must confess) to otherwise unknown crimes during sex offender treatment. Now, when the defendant tells all his past crimes to the therapist, he obtains complete absolution and a plenary indulgence; he’s home free. There will henceforth likely be more sins forgiven in sex offender treatment than in the confessional.
In Murphy, the defendant, as part of sex offender treatment, disclosed a previously unknown homicide perpetrated as part of a previously unknown rape. Just like Fuller, he sought to suppress his statements in connection with his subsequent prosecution for the undisclosed crimes on the basis that his confession was obtained in violation of his Fifth Amendment right against self-incrimination. Murphy, 465 U.S. at 422-25, 104 S.Ct. at 1139-41. By applying a proper Fifth Amendment analysis, as discussed above, the Court concluded that Murphy’s statements were voluntary, were not compelled and that he could be prosecuted. Murphy, 465 U.S. at 440, 104 S.Ct. at 1149. That will, henceforth, not be the result in Montana under our decision here. Fuller and similarly situated defendants, *180 unlike Murphy, will never be brought to justice for their crimes. As a result of this decision, it will be interesting indeed, to watch the legal cartwheels when some defendant first confesses to a previously unknown homicide during sex offender therapy.
Furthermore, as pointed out above, it is well-established that a witness who is sworn and compelled to testify truthfully in court, in some other legal proceeding or before a grand jury on the pain of contempt does not need to be given a Miranda warning, but, rather, must affirmatively assert his Fifth Amendment privilege in order to avoid incriminating himself. See Murphy, 465 U.S. at 431, 104 S.Ct. at 1144. That long-standing legal principle is now very much in question as a result of our decision here. Any witness who incriminates himself can now make the same argument as Fuller. “Nobody told me I had to assert my Fifth Amendment right, or that I even could. Since I was subpoenaed to testify and sworn to tell the truth, I figured I didn’t have any other choice and that I’d be thrown in jail for contempt if I didn’t testify.” Presumably, such a witness will be able to cite our decision in this case for the rule that, under such circumstances, his incriminating statements cannot be used against him in a subsequent criminal prosecution.
How the various participants in the criminal justice system in Montana will now deal with the rule we have established remains to be seen. We have, in my view however, ignored well-established principles of Montana and federal law to reach a result that is grounded in nothing more than the illogical proposition that even where the record and the law do not support the conclusion that Fuller was required to incriminate himself, he was “compelled” nonetheless. In doing so, we have misapplied a U.S. Supreme Court decision factually and legally on point and we have unnecessarily undone a whole body of Fifth Amendment law. Worse, in the process we have created much greater and more serious problems that will have ramifications far beyond the fact situation presented here.
I would affirm the decision of the District Court, and I dissent from our failure to do so.
CHIEF JUSTICE TURNAGE and JUSTICE ERDMANN concur in the foregoing dissent.