## MONTANA *v.* IMLAY

No. 91–687. Argued October 7, 1992—Decided November 3, 1992

*Marc Racicot,* Attorney General of Montana, argued the cause for petitioner. With him on the briefs was *Elizabeth L. Griffing,* Assistant Attorney General.

*Billy B. Miller* argued the cause and filed briefs for respondent.*

PER CURIAM.

The writ of certiorari is dismissed as improvidently granted.

JUSTICE STEVENS, concurring.

When the trial judge revoked respondent's parole, he reinstated a 5-year sentence of imprisonment. On appeal, the Montana Supreme Court, in the decision before us, vacated the revocation order and remanded the case for resentencing. 249 Mont. 82, 813 P. 2d 979 (1991). The trial court subse-

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Starr, Assistant Attorney General Mueller,* and *Deputy Solicitor General Bryson;* and for the State of Vermont et al. by *Jeffrey L. Amestoy,* Attorney General of Vermont, and *Donald F. Hartman, Jr.,* Assistant Attorney General, and by the Attorneys General for their respective States as follows: *Charles E. Cole* of Alaska, *Paul J. McMurdie* of Arizona, *Charles M. Oberly III* of Delaware, *Robert T. Stephan* of Kansas, *Chris Gorman* of Kentucky, *Richard P. Ieyoub* of Louisiana, *Frank J. Kelley* of Michigan, *Frankie Sue Del Papa* of Nevada, *Robert J. Del Tufo* of New Jersey, *Lacy H. Thornburg* of North Carolina, *Lee Fisher* of Ohio, *Ernest D. Preate, Jr.,* of Pennsylvania, *T. Travis Medlock* of South Carolina, *Mark Barnett* of South Dakota, *Paul Van Dam* of Utah, and *Mary Sue Terry* of Virginia.

*John E. B. Myers* filed a brief for the American Professional Society on the Abuse of Children as *amicus curiae.*

quently resentenced respondent, again to a 5-year term of imprisonment, and the Montana Supreme Court upheld that sentence in a judgment not now before us for review.

Thus, no matter which party might prevail in this Court, the respondent's term of imprisonment will be the same. At oral argument, neither counsel identified any way in which the interests of his client would be advanced by a favorable decision on the merits—except, of course, for the potential benefit that might flow from an advisory opinion.* Because it is not the business of this Court to render such opinions, it wisely decides to dismiss a petition that should not have been granted in the first place.

JUSTICE WHITE, dissenting.

We granted certiorari to consider whether the Fifth Amendment bars a State from conditioning probation upon the probationer's successful completion of a therapy program in which he would be required to admit responsibility for his criminal acts. In the decision below, the Montana Supreme Court held that, "absent any grant of immunity" from prosecution for incriminating statements made during therapy, the Fifth Amendment "prohibit[s] augmenting a defendant's sentence because he refuses to confess to a crime or invokes his privilege against self-incrimination." 249 Mont. 82, 91, 813 P. 2d 979, 985 (1991). The constitutional question is an important one and the decision below places the Montana Supreme Court in conflict with other courts. See *State* v. *Gleason*, 154 Vt. 205, 576 A. 2d 1246 (1990); *Henderson* v.

---

*Indeed, counsel for the State went so far as to explain that a victory for Montana on the merits would actually work to the advantage of respondent, by subjecting him to treatment leading to parole eligibility:

"Question: So you're really trying to advance his [respondent's] interests?

"[Answer]: Yes, sir, we are.

"Question: He is better off if you win than if you lose.

"[Answer]: In our judgment that is certainly the case." Tr. of Oral Arg. 5.

*State*, 543 So. 2d 344 (Fla. App. 1989); *Russell* v. *Eaves*, 722 F. Supp. 558 (ED Mo. 1989), appeal dism'd, 902 F. 2d 1574 (CA8 1990). I believe we should decide the question and resolve the conflict.

As an initial matter, there can be no doubt that the decision below is a "final judgment" for purposes of 28 U. S. C. § 1257. Although the Montana Supreme Court remanded the case for resentencing, this is clearly a case in which "the federal issue, finally decided by the highest court in the State, will survive and require decision regardless of the outcome of future state-court proceedings." *Cox Broadcasting Corp.* v. *Cohn*, 420 U. S. 469, 480 (1975); see also *Brady* v. *Maryland*, 373 U. S. 83, 85, n. 1 (1963).

At oral argument, however, two further questions were raised concerning whether any live controversy persists in this case. First, counsel for respondent stated that his client had been assured by state corrections officials that he would be paroled in the very near future. If this were true, the outcome of this case could have no practical effect upon respondent's sentence. Second, counsel for petitioner stated his belief that a probationer would enjoy immunity from prosecution for incriminating statements made during court-ordered therapy. This statement calls into doubt a critical assumption underpinning the Montana Supreme Court's judgment and might suggest that there really is no disagreement about the Fifth Amendment's application to this case.

In my view, however, neither party's representation is sufficient to deprive this case of its status as a case or controversy. First, as counsel for both parties readily acknowledged, there is nothing in the record to support the expectation of respondent's counsel that respondent will be paroled shortly without regard to his completion of the State's therapy program. As far as the record is concerned, a decision in this case would affect respondent's eligibility for parole and thus have real consequences for the litigants.

8

Nor does the State's "concession" that a defendant would have immunity from prosecution based upon incriminating statements made to a therapist moot this case or otherwise render it unsuitable for review. This "concession" appeared to rest solely on the State's assumption that this Court's decision in *Minnesota* v. *Murphy,* 465 U. S. 420 (1984), mandated such a result. That reading of *Murphy,* however, is at least debatable. Because the State's concession appears to reflect a possible misunderstanding of its obligations under the law rather than any unequivocal and unconditional declaration of its own future prosecutorial policy, this statement does not moot this case or obviate the controversy. If its reading of *Murphy* were shown to be erroneous, the State might well revert to the view that a defendant could be prosecuted on the basis of statements made during postconviction therapy. Such a qualified concession is too uncertain a basis to find that no live controversy is presented. Cf. *United States* v. *Generix Drug Corp.,* 460 U. S. 453, 456, n. 6 (1983); *United States* v. *Concentrated Phosphate Export Assn., Inc.,* 393 U. S. 199, 203 (1968). In any event, the Montana Supreme Court evidently was of the view that no grant of immunity protected respondent or others in his position and the State continues to suffer the consequences of its constitutional holding.

Because I believe that a genuine and important controversy is presented in this case, I respectfully dissent from the dismissal of the writ of certiorari.