JUSTICE TRIEWEILER
concurring.
I concur with the majority opinion and all that is included in its discussion. I write separately to respond to the dissenting opiMon wMch seems to unnecessarily confuse what should be a straightforward application of clear constitutional principles.
The Fifth Amendment of the United States Constitution provides in relevant part that “ [n] o person shall be ... compelled in any criminal case to be a witness against himself.”
Article II, Section 25, of the Montana Constitution provides that “[n]o person shall be compelled to testify against himself in a criminal proceeding.”
The United States Supreme Court has noted that:
It has long been held that tMs prohibition [the Fifth Amendment] not only permits a person to refuse to testify against Mmself at a *168 criminal trial in which he is a defendant, but also “privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.”
Minnesota v. Murphy (1984), 465 U.S. 420, 426, 104 S.Ct. 1136, 1141, 79 L.Ed.2d 409 (quoting Lefkowitz v. Turley (1973), 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274).
I would hold that Montana’s constitutional right to avoid self-incrimination found at Article II, Section 25, is similarly applicable to formal or informal proceedings when a person’s answers might incriminate him or her in future criminal proceedings.
The undisputed facts in this case clearly establish that Fuller was compelled to provide information about his own criminal conduct which then formed the basis for his prosecution for that conduct. The District Court’s order dated January 27, 1994, which suspended Fuller’s original sentence provided in part as follows:
[S]aid prison sentence is suspended upon the following conditions ...:
....
12. The defendant shall obtain and/or continue his enrollment and participation in the outpatient Sex Offender Treatment Program with a professional who is in compliance with the standards for treatment developed by the Montana Sex Offender Association. The defendant shall follow all policies of that program and shall not terminate from such treatment without prior approval of his Supervising Officer.
....
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the defendant fails to comply with any of the above-conditions, a bench warrant of arrest will be issued, the defendant apprehended, and the said defendant will be required to appear before this Court for further proceedings.
(Emphasis added.)
The stipulated facts subscribed to on behalf of the State of Montana by the Deputy Yellowstone County Attorney and filed with the District Court as the basis for its decision provide the following undisputed information about the requirements for Fuller’s satisfactory completion of the sex offender program which was a condition to the suspension of his sentence:
*169 Patients are not admitted into the treatment program if they are in denial or do not honestly disclose their offending history. ...
Employees of South Central Treatment Associates are under a statutory duty to report any evidence they possess about past or present offenses committed by individuals in their treatment program. ... Offenders who enter in the treatment program are required to fully disclose their offense histories. ...

....

... Exhibit E represents an offense history prepared by Fuller pursuant to treatment rules and presented in group on February 15,1994, which reflect [s] the incidents which are the subject of this case.
(Emphasis added.)
No fair and objective review of the record before this Court can lead to any conclusion other than that Fuller was compelled by order of court to participate in a program which required that he admit prior criminal offenses and that those admissions then formed the basis of the State’s prosecution of Fuller in this case. These compelled admissions, therefore, violated the federal and state constitutional rights against self-incrimination.
The dissent takes the position that all of the above was perfectly okay because had Fuller chosen to test the District Court’s authority to do what it threatened to do (put him in prison) he probably could have succeeded pursuant to our decision in State v. Imlay (1991), 249 Mont. 82, 813 P.2d 979. The dissent misses the point from any practical perspective.
The United States Supreme Court, in Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, recognized that the right to remain silent in the face of custodial interrogation by law enforcement officials was meaningless to the average person unless that person was informed of his or her constitutional right. The U.S. Supreme Court therefore held that before persons suspected of committing a crime can be interrogated in a custodial situation, they must be advised of the right to remain silent and the consequences of failing to do so.
The dissenting opinion, however, proceeds from the assumption that while the average person cannot be expected to understand that he or she has a Fifth Amendment right, that same person should be fully aware of his or her rights pursuant to this Court’s decision in *170 Imlay, even though that person is specifically instructed to the contrary by agents for the State. The logic of that conclusion escapes me.
I, for one, as the author of Imlay, recall the outcry from the Attorney General’s Office and prosecutors in this State about their surprise at that decision. Their complaint was that it was totally unforeseeable and unjustified by the prior decisions of this Court or the federal courts. While I strongly disagree, I am now at a loss to understand how the result could have been so unforeseeable to people with legal educations and years of experience in the area of criminal and constitutional law, and yet some totally uneducated and uninformed suspect is supposed to be aware of the case’s implications.
I suppose there have been stranger arguments made before this Court. However, none come immediately to mind.
This is a classic penalty case. Fuller was told that he either report accurately and completely his prior history of sex offenses or he would not be allowed to remain in his treatment program and his suspended sentence would be revoked. Revocation of his suspended sentence meant imprisonment. He was never advised that he had a right pursuant to this Court’s decision in Imlay to refuse to disclose his prior history of offenses and that he could not be sent to prison for doing so. There could not be a clearer threat of penalty for exercise of a person’s right to remain silent.
The dissent’s suggestion that we have no basis for concluding that Fuller admitted his prior offending history because it was a requirement of his treatment program is incorrect. The quoted portion of the District Court’s order and the facts to which the State stipulated make that fact absolutely clear. Furthermore, in case after case before this Court we have been told that admission of the offending history is a condition to participation in a sex offender treatment program. See State v. Skroch (1994), 267 Mont. 349, 357, 883 P.2d 1256, 1262; State v. Cameron (1992), 253 Mont. 95, 108, 830 P.2d 1284, 1292-93 (Trieweiler, J., dissenting); Imlay, 249 Mont. at 85-86, 813 P.2d at 982; State v. Donnelly (1990), 244 Mont. 371, 381, 798 P.2d 89, 95.
The dissent suggests that the U.S. Supreme Court’s decision in Murphy clearly does not provide for immunity from prosecution based on the statements which are the subject of this appeal. If that conclusion is as obvious as the dissent suggests, I find it interesting that the State took just the opposite position before the United States Supreme Court when it argued State v. Imlay (1992), 506 U.S. 5, 113 S.Ct. 444, 121 L.Ed.2d 310. Although the writ of certiorari was *171 dismissed in that case as improvidently granted, Justice White dissented. In his dissenting opinion, he noted that:
At oral argument, however, two further questions were raised concerning whether any live controversy persists in this case. ... Second, counsel for petitioner [the State of Montana] stated his belief that a probationer would enjoy immunity from prosecution for incriminating statements made during court-ordered therapy. This statement calls into doubt a critical assumption underpinning the Montana Supreme Court’s judgment and might suggest that there really is no disagreement about the Fifth Amendment’s application to this case.
... This “concession” appeared to rest solely on the State’s assumption that this Court’s decision in Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), mandated such a result.
Imlay, 506 U.S. at 5, 7-8, 113 S.Ct. at 444, 446 (White, J., dissenting).
Apparently, even the Attorney General’s Office did not agree with the dissent’s interpretation of Murphy when the opposite interpretation was to its greater advantage.
Finally, I find it incredible that the dissent bemoans the fact that someone compelled to admit offenses should be given immunity from prosection as a result of those disclosures. Immunity for compelled disclosures is nothing new. It is provided by statute. See § 46-15-331, MCA. The dissent does nothing less than suggest that the State’s ability to enforce the law depends on its ability to compel citizens to disclose incriminating information about themselves. This suggestion would completely abrogate the plain language of the Fifth Amendment and Article II, Section 25, of the Montana Constitution. Law enforcement has successfully operated for over 200 years, in spite of the constraints imposed by the Fifth Amendment.
The nearly hysterical tone of the dissent’s concerns is totally inconsistent with its initial legal conclusion. On the one hand, the dissent argues that Fuller should have known that pursuant to our decision in Imlay he had a right to refuse to disclose any prior offending history (in which event no one would have known about it; he could not have been prosecuted for it; and his victims could not have been treated). On the other hand, the dissent suggests that if he does disclose that prior history in an effort to be effectively treated and the State cannot prosecute him on the basis of his compelled disclosures, the criminal justice system, as we now know it, will *172 somehow crumble and the citizens of this state will be unsafe in their homes. How the two positions can possibly be reconciled is never explained.
I would suggest that the general public in Montana is much better off in the long term by effective treatment of sex offenders and their victims, which complete and open disclosure would further, than by the dissent’s first suggestion which is that Fuller could have simply remained in the program and avoided revocation of his suspended sentence by invoking his right pursuant to Imlay to conceal his prior offending history.
I conclude that while the dissent may make sensational reading for nonlawyers, it makes little sense from a constitutional point of view, and if followed, it would impair the State’s ability to effectively treat sex offenders and their victims.
JUSTICE GRAY joins in the foregoing concurring opinion.